# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2022-CA-00855-SCT

*CHOKWE A. LUMUMBA, IN HIS OFFICIAL CAPACITY AS MAYOR OF THE CITY OF JACKSON*

*v.*

*THE CITY COUNCIL OF JACKSON, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/15/2022 |
| TRIAL JUDGE: | HON. LARRY E. ROBERTS |
| TRIAL COURT ATTORNEYS: | DESHUN TERRELL MARTIN |
| | JERRY L. MILLS |
| | ZACHARY LEWIS GIDDY |
| | JOHN PRESTON SCANLON |
| | FELECIA PERKINS |
| | JESSICA NICOLE AYERS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | FELECIA PERKINS |
| | JESSICA NICOLE AYERS |
| ATTORNEYS FOR APPELLEE: | DESHUN TERRELL MARTIN |
| | JOHN PRESTON SCANLON |
| | JERRY L. MILLS |
| | ZACHARY LEWIS GIDDY |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 03/09/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE KITCHENS, P.J., COLEMAN AND GRIFFIS, JJ.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     Jackson Mayor Chokwe Antar Lumumba attempts to veto the Jackson City Council's refusal to approve the Mayor's preferred garbage collection contract. The City of Jackson functions under a mayor-council form of government with a mayor that exercises executive

power under Mississippi Code Section § 21-8-15 (Rev. 2015) and a legislative city council under Mississippi Code Section 21-8-9 (Rev. 2015). The matter *sub judice* presents the Mississippi Supreme Court with the central question of whether a mayor, in his restricted executive power, may override by veto a negative action of a city council. That is to say, whether a vote *not* to do something by the plenary legislative body constitutes an action that a mayor may supersede by executive pen. For the foregoing reasons, we hold that he may not, and we affirm the judgment of the trial court.

## FACTS

¶2.    On February 17, 2022, the Mayor declared a state of emergency in the city under Mississippi Code Section 33-15-17(d) (Rev. 2020) because of the impending end of an emergency contract with Waste Management for the collection of residential solid waste. The Mayor then entered into contract negotiations with Richard's Disposal, Inc., to provide for the collection of residential solid waste beginning on April 1, 2022. Meanwhile, Waste Management, the holder of the expiring contract, offered to extend its contract for thirty days. On March 8, 2022, the Jackson City Council voted not to ratify the Richard's contract presented by the Mayor.

¶3.    The next day, March 9, 2022, the Mayor first filed suit in the Chancery Court of the First Judicial District of Hinds County against the Council, seeking a determination of the rights and legal authority of the City Council and the Mayor with regard to the declaration

2

of a local emergency concerning the collection of residential solid waste. On April 1, 2022, Special Chancellor Jess Dickinson entered an opinion and judgment, which provided:

> The Council has no authority to negotiate and/or execute a contract for the collection of residential solid waste, absent the existence of the exceptions in Miss. Code Ann. § 21-8-19; The Council has no authority to amend the Mayor's order declaring a local emergency, and instead, after the Mayor declares a local emergency the Council is required to approve or disapprove the proclamation; and
>
> The Mayor has the authority to find independent contractors/vendors who can provide necessary emergency services and present contracts to the Council for approval.

¶4. At a special meeting of the City Council on April 1, 2022, the Mayor again asked the Council to ratify the "emergency contract" with Richard's to provide garbage collection services for the city. The motion to ratify the contract was voted down twice, and the Mayor then announced his intention to veto the non-ratifying votes. The Mayor predicated his veto on Special Chancellor Dickinson's holding and signed an order "RATIFYING AN EMERGENCY SOLID WASTE COLLECTION AND HAULING AGREEMENT WITH RICHARD'S DISPOSAL, INC. FOR A TERM OF ONE (1) YEAR" on April 1, 2022.

¶5. On April 14, 2022, the Mayor formally vetoed the City Council's April 1, 2022 denial of the emergency contract ratification under Mississippi Code Section 21-8-17(2), which provides, in relevant part, that

> Ordinances adopted by the council shall be submitted to the mayor he shall, within ten (10) days (not including Saturdays, Sundays or holidays) after receiving any ordinance, either approve the ordinance by affixing his signature thereto or return it to the council by delivering it to the clerk of the council

3

together with a statement setting forth his objections thereto or to any item or part thereof.

Miss. Code. Ann. § 21-8-17(2) (Rev. 2015).

¶6. The matter now before the Mississippi Supreme Court began with the filing of a Complaint for Declaratory Judgment and Motion for Injunctive Relief by the City Council on May 11, 2022. The City Council specifically requested (1) a declaratory judgment in favor of the City Council that, as a matter of law, the Mayor cannot veto a negative vote of the City Council and (2) an injunction expressly prohibiting the Mayor from attempting any action on a veto of a negative vote. The City Council based its complaint on the Mayor's veto of its refusal to approve the emergency contract to Richard's, and it requested the court to declare the veto a legal nullity; it requested further that any subsequent contract entered into by the Mayor be declared invalid due to the failure to obtain approval of the contract by the City Council.

¶7. In response, the Mayor filed a motion to dismiss and countercomplaint for declaratory judgment on June 13, 2022, seeking a determination that (1) a negative vote by the City Council constitutes an official action by the City Council; and (2) the Mayor in a mayor-council form of government has authority to veto both affirmative and negative actions of a City Council.

¶8. After prolonged briefing and dueling motions for summary judgment, Special Chancellor Larry Roberts entered an Order and Final Judgment on July 15, 2022, denying the Mayor's motion to dismiss and motion for summary judgment and granting declaratory

4

judgment in favor of the City Council. Further, the Special Chancellor found that "Mississippi law does not permit the mayor, in a mayor-council municipality, to veto a matter not adopted by the city council. A negative vote is not an ordinance adopted by the council." In response to "discrepancies between the trial court's bench ruling and the final judgment," the Mayor filed a "Motion for Additional Findings of Fact and Conclusions of Law, and To Alter Order and Opinion and Final Judgment," pursuant to Rules 52 and 59 of the Mississippi Rules of Civil Procedure, on July 25, 2022. The Mayor's motion argued that the trial court erred by admitting documents into evidence over the Mayor's objection, by denying the Mayor's request for additional findings of facts, and by denying the Mayor's motions to dismiss and for summary judgment.

¶9. On August 1, 2022, the trial court entered an "Order Denying Motion for Additional Findings of Fact and Conclusions of Law, and Denying Motion to Alter or Amend Opinion and Final Judgment." The Mayor timely filed a notice of appeal on August 26, 2022.

### STANDARD OF REVIEW

¶10. "When reviewing a trial court's grant or denial of a motion to dismiss or a motion for summary judgment, this Court applies a *de novo* standard of review," **Burleson v. Lathem**, 968 So. 2d 930, 932 (¶ 7) (Miss. 2007) (citing **Scaggs v. GPCH-GP, Inc.**, 931 So. 2d 1274, 1275 (¶ 6) (Miss. 2006); **Park on Lakeland Drive, Inc. v. Spence**, 941 So. 2d 203, 206 (¶ 5) (Miss. 2006); **McLendon v. State**, 945 So. 2d 372, 382 (¶ 26) (Miss. 2006); **Monsanto Co. v. Hall**, 912 So. 2d 134, 136 (¶ 5) (Miss. 2005)), and summary judgment should be granted

5

only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Gibson v. Williams, Williams & Montgomery, P.A.*, 186 So. 3d. 836, 844 (¶ 14) (Miss. 2016) (quoting Miss. R. Civ. P. 56(c)) Further, "[W]hen the government has misapprehended a controlling legal principle, no deference is due and our review is de novo." *ABC Mfg. Corp. v. Doyle*, 749 So. 2d 43, 45 (¶ 10) (Miss. 1999) (citing *Smith v. Jackson Constr. Co.*, 607 So. 2d 1119, 1125 (Miss. 1992)).

## DISCUSSION

I. **Whether the trial court erred by allowing the City Council to admit specific exhibits into evidence.**

¶11. The Mayor first argues the trial court erred by admitting exhibits into evidence that resulted in the defeat of his motion for summary judgment. The exhibits included two city ordinances, four council votes, and four vetoes of the same. The Mayor, in his brief, quotes *Illinois Central Railroad Co. v. Jackson*, 179 So. 3d 1037, 1045 (Miss. 2015), and notes that our Court requires that materials considered in a Rule 56(c) motion must be "on file." Specifically referring to ten exhibits that were considered by the Special Chancellor, the Mayor argues their admission was error because each was not "on file." Each exhibit was a public record and was readily available throughout the trial record. Certified copies of public records to prove content are admissible under Mississippi Rule of Evidence 1005 and are self-authenticating under Mississippi Rule of Evidence 902(4). We have found that under Mississippi Rule of Evidence 201(b), a court may take judicial notice of minutes of a public board meeting were properly noticed judicially "as they were easily ascertainable through

6

certified public records." ***Ditto v. Hinds Cnty.***, 665 So. 2d 878, 880-81 (Miss. 1995). We answered a similar question in ***Russell v. Humphreys County Board of Supervisors (In re Validation of Tax Anticipation Note Series 2014)***, 187 So. 3d 1025, 1035 (Miss. 2016), when in the face of objection to the admission of public meeting minutes, we upheld the trial court's decision to take judicial notice and accept all of the minutes offered into the trial record and we found those were, as a result, minutes properly before the Court on appeal. The Mayor's argument is without merit.

¶12.    Even so, the exhibits that were produced by the City Council were readily available official documents of the City of Jackson, which were at all times available to the Mayor and the public. At the hearing, each was presented as a certified copy of the original ordinances, votes, and vetoes. The documents were both on file with the Court and were, in fact, served on the Mayor throughout the litigation process. Because each of the documents were certified copies of official city business that were available at all times within the record and to the public, the Mayor is now precluded from arguing now that their admission was error.

¶13.    We have held that "Evidentiary matters are viewed in a light most favorable to the non-moving party." ***Lamar Corp. v. State Highway Comm'n of Miss.***, 684 So. 2d 601, 604 (Miss. 1996) (quoting ***Crain v. Cleveland Lodge 1532, Order of Moose, Inc.***, 641 So. 2d 1186 (Miss. 1994)). We held further that "[a]ll that is required of a non-movant to survive a motion for summary judgment is to establish a genuine issue of material fact by the means available under the rule." ***Simmons v. Thompson Mach. of Miss., Inc.***, 631 So. 2d 798, 801

(Miss. 1994) (internal quotation marks omitted) (quoting *Lyle v. Mladinich*, 584 So. 2d 397, 398 (Miss. 1991)). While any factual issue must be material to withstand a motion for summary judgment, "it is also true that evidentiary matters—admissions in pleadings, answers to interrogatories, depositions, affidavits—are viewed in light most favorable to non-moving party, who has the benefit of every reasonable doubt." *Garrett v. Nw. Miss. Junior Coll.*, 674 So. 2d 1, 2 (Miss. 1996) (citing *Simmons*, 631 So. 2d at 802).

¶14. The Mayor is mistaken that the admission of the ten exhibits was error. As a matter of law, the exhibits were of a kind and availability, to the mayor and the court, that made their admission in the trial court proper.

II. **Whether the trial court erred by denying the "Motions for Additional Findings of Fact and Conclusions of Law, and to Alter Order and Opinion and Final Judgment."**

¶15. The Mayor argues that "when ruling on a summary judgment motion under Rule 56, a court may indeed "pierce the pleadings and consider extrinsic evidence." While arguing the trial court did not properly do so, the Mayor argues both that the trial court should not have considered the ten exhibits because they were not in the pleadings but also that it should have taken steps to pierce the pleadings to find additional facts. The Mayor cannot have his cake and eat it too. Again, both parties stated there was no genuine issue of material fact. In his June 16, 2022 order, the Special Chancellor ruled accordingly that because both parties conceded there was no genuine issue of material fact, there was no need for the court to make any additional findings of fact.

8

**III.    Whether the trial court erred by denying summary judgment to the Mayor and by granting summary judgment in favor of the City Council.**

¶16.    In its motion for summary judgment, the City Council requested that the court find "there is no genuine issue of material fact and that the City Council is due judgment as a matter of law and to enter a ruling in favor of the City Council that a mayor may not lawfully veto a negative vote." Simply put, the Council argues that, as a matter of law, it is entitled to judgment in its favor because there is no authority of a mayor, acting in his executive authority, to veto a negative vote or non-action of a city's legislative body. We agree.

¶17.    The City of Jackson is a mayor-council form of government under Mississippi Code Section. § 21-8-1 to -47 (Rev. 2015) Under such a form of government, the legislative and executive power are separated. Miss. Code Ann. § 21-8-9 (Rev. 2015) Despite the promulgated separation, the Mayor's primary contention is that any decision from the City Council is one subject to an executive veto pursuant to Mississippi Code Section § 21-8-47 (Rev. 2015). Here, the Mayor contends that the failed ratifications of his proposed emergency contracts were official actions by the City Council and were thus subject to veto. The Mayor seemingly avers that the term "ordinance" in the statute governing mayor-council form of government, provides that "'ordinance' as used in the chapter shall be deemed to include ordinances, resolutions, orders and any other official actions of the council . . . ." Miss. Code Ann. § 21-8-47 (Rev. 2015). The mayor fails, however, to consider the statute when read in its whole, which provides that

9

(2) **Ordinances *adopted* by the council** shall be submitted to the mayor and he shall, within ten (10) days (not including Saturdays, Sundays or holidays) after receiving any ordinance, either approve the ordinance by affixing his signature thereto or return it to the council by delivering it to the clerk of the council together with a statement setting forth his objections thereto or to any item or part thereof. No ordinance or any item or part thereof shall take effect without the mayor's approval, unless the mayor fails to return an ordinance to the council prior to the next council meeting, but no later than fifteen (15) days (not including Saturdays, Sundays or holidays) after it has been presented to him or unless the council upon reconsideration thereof not later than the tenth day (not including Saturdays, Sundays or holidays) following its return by the mayor, shall, by a vote of two-thirds (2/3) of the members present and voting resolve to override the mayor's veto.

Miss. Code. Ann. § 21-8-17(2) (Rev. 2015) (emphasis added).

¶18. As written, the code section clarifies and outlines that a mayor may only veto an ordinance that has been *adopted by* the City Council. An ordinance by the City of Jackson states the same in chapter 2, article II, division 1, section 2-66. There, the city's own code provides that:

**Sec. 2-66. - Voting.**

The vote of the members of the council on any ordinance or resolution shall be taken by a show of hands. No action of the city council shall be considered adopted *unless it receives the **affirmative vote*** of that portion of the council dictated by state law under the circumstances. A member may change a vote up until the time the vote is finally announced. After the vote is announced and until adjournment of the meeting at which the vote is taken, a member may be permitted to change his vote by unanimous consent of the council. The record of votes shall be indicated by "yeas," "nays," "abstain" or "absent."

Jackson, Miss. Code ch. 2, art. II, div. 1, § 2-66 (1971) (emphasis added),

10

https://library.municode.com/ms/jackson/codes/code_of_ordinances?nodeId=COOR_CH 2AD_ARTIICICO_DIV2ME_S2-66VO

¶19. "It is well established that municipalities have only those powers that are granted them by their charters and the statutes." ***Grant v. City of Columbus***, 812 So. 2d 976, 978 (¶ 11) (Miss. 2002) (citing ***Peterson v. City of McComb***, 504 So.2d 208, 209 (Miss. 1987); ***Delta Elec. Power Ass'n v. Miss. Power & Light Co.***, 250 Miss. 482, 510, 149 So. 2d 504, 513 (1963); ***City of Jackson v. Freeman-Howie, Inc.***, 239 Miss. 84, 93, 121 So. 2d 120 (1960)). Thus, it is clear under both the law of the State of Mississippi and of the City of Jackson that only an adopted affirmative action is an action that may be vetoed by a mayor in a mayor-council form of government. Though not binding on our Court, the attorney general has opined that mayors have limited veto power and cannot veto a negative action. "Without any action taken by the board of alderman, a mayor has nothing to veto. Inaction on a proposal is not subject to the mayor's veto." Miss. Att'y Gen. Op., 1987 WL 290532, *Cordell*, at *2 (Oct. 13, 1987). Thus, when the Mayor vetoed a non-action of the City Council, the action was not one properly be subject to veto. Because the plain meaning of the statute clearly outlines the breadth of authority of a mayor to veto and the scope of actions subject thereof, the mayor's attempted veto of a non-action by the City Council is a nullity.

¶20. The overwhelming weight of authority supports the special chancellor's grant of the City Council's motion for summary judgment because no genuine issue of material fact or

11

law existed.  The mayor was not legally entitled to veto a non-action or negative vote of the city council.  Accordingly, we affirm the judgment of the trial court.

## CONCLUSION

¶21.    Because the Mayor in a mayor-council municipality may not, in his limited legislative power, veto an action or measure not undertaken by the City Council and because no statutory authority exists allowing him to do so, we affirm the judgment of the trial court.

¶22.    **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**